IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES E. ROSE, JR., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-4573 |
| | : | |
| SHANNON TYNDALE, | : | |
|     Defendant. | : | |

MEMORANDUM

SCHMEHL, J.  /s/ JLS                                                                                       JANUARY 18, 2023

        Plaintiff James E. Rose, Jr., a prolific litigant in this Court, brings this action against Defendant Shannon Tyndale for alleged violations of his civil rights.  Currently before the Court are Rose's pro se Complaint (ECF No. 2) and his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1).  Because it appears that Rose is unable to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.  For the following reasons, Rose's complaint will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.     FACTUAL ALLEGATIONS[1]

        The primary contention of Rose's Complaint is Rose's belief that Defendant Tyndale reported him to Lehigh County Children and Youth ("LCCY") for child abuse and neglect in retaliation for Rose failing to hire her as a tutor for his minor son.  By way of background, Rose alleges that on or about October 5, 2022, he placed an advertisement on Craigslist in order find an experienced math tutor for his son.  (Compl. ¶¶ 1-2.)  On the following day, October 6, 2022,

---

[1] The factual allegations set forth in this Memorandum are taken from Rose's Complaint.  (*See* ECF No. 2.)  Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied by the CM/ECF docketing system.

Defendant Tyndale called Rose and asked to come to his home for an interview in response to the ad. (*Id.* ¶ 4.) Rose alleges that upon arriving at his home, Tyndale sought a "$20 consultation fee" and informed Rose that she was qualified to teach his son math. (*Id.* ¶¶ 6-7.) Rose contends that he was "not really impressed with" Tyndale and thought that her request for a consultation fee was "ridiculous" because he "had no intentions of giving a total stranger $20 for a 'consultation'." (*Id.* ¶¶ 6, 8.) Believing that Tyndale was "no more than a scavenger who needed money" and feeling sorry for her, Rose decided to give Tyndale $10 for gas. (*Id.* ¶ 8.) Rose claims, however, that he then explained to Tyndale that she "would not get the job" as a tutor until she was "approved by the Court[.]" (*Id.* ¶ 11.) At that time, Tyndale left Rose's home, apparently "disappointed at [Rose's] decision[.]" (*Id.* ¶ 12.)

Rose alleges that shortly after she departed, Tyndale sent Rose a series of text messages which Rose characterizes as "threatening[.]" (*Id.* ¶¶ 13-14.) Rose asserts that the last text message he received from Tyndale "clearly stated she was going to turn . . . [Rose] into Lehigh County Children and Youth." (*Id.* ¶ 15.) Rose attached a copy of these text messages to his Complaint as Exhibit A. It appears that the final message Tyndale sent reads in pertinent part, "I don't care how much money you have, clean your house up because it is disgusting. Furthermore, there is probably a reason that your son has had a 'cold' for the last two weeks – because he cannot breathe in the filth that you provide for him. You'll be lucky if social services don't get called on your" family. (*Id.* at 12.) Rose claims that approximately a week later, he received "a call from Lehigh County Children and Youth alleging [his] house was untidy and that [his] son was neglected or abused." (*Id.* ¶ 20.) Rose alleges that Mark Nordyke, a worker from LCCY, conducted a home visit of Rose's residence and interviewed his son. (*Id.* ¶ 21.)

Rose "believes this is not a coincidence and Defendant willfully, deliberately and intelligently made a false statement to public officials in bad faith for the sole and express purpose of causing harm to" Rose and his son "in violation of their Civil Rights and Liberties as minority persons." (*Id.* ¶ 39.) Rose alleges that Tyndale's "actions were a retaliatory and vindictive tactic" that she employed against him "because . . . [Rose] did not select [Tyndale] for the open position teaching" his son. (*Id.* ¶ 40.) He also claims that Tyndale made these false statements "in order to harass" Rose and his son "because [she] was not hired for the job[,]" and that she "decided to use a public agency for her vindictive intentions." (*Id.* ¶ 41; *see also id.* ¶ 43.) Based on these allegations, Rose seeks $50,000 in punitive damages and $50,000 in nominal damages for "having his Civil Rights and Liberties violated and being the victim of Racial Discrimination." (*Id.* at 8.)

## II.     STANDARD OF REVIEW

The Court will grant Rose leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible []

claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Rose is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Rose repeatedly alleges that he brought this suit based on violations of his "Civil Rights and Liberties" as a minority and that he was a victim of racial discrimination.[2]  (*See* Compl. at 1, 8; *see also id.* ¶¶ 37, 39, 43, 45, 52.)  Rose specifically cites 42 U.S.C. §§ 1985, 1986, and 1988 as a basis for his claims, (*see id.* at 1), and while he does not explicitly state that he seeks to bring his claims in this action pursuant to 42 U.S.C. §§ 1981 or 1983, the Complaint, liberally construed, can fairly be said to raise such claims.  The Court addresses each in turn.

### A.   Rose's Conspiracy Claims Under §§ 1985 and 1986

Rose asserts claims pursuant to §§ 1985 and 1986.  (Compl. at 1.)  Section 1985(3) creates a cause of action against persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2)

---

[2] Rose is the only named Plaintiff in this action, but it remains unclear from the Complaint whether Rose seeks to raise these claims solely on his own behalf, on behalf of his minor son, or both.  To the extent Rose seeks to raise any claims on behalf of his minor child, he is prohibited from doing so.  A *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself.  Accordingly, because Rose is appearing *pro se* and is not an attorney, he may not bring claims on behalf of his minor child.  *See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991).  Therefore, throughout this Memorandum, the Court's analysis focuses on these claims as though they are brought solely on Rose's own behalf.

motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Moreover, a plaintiff must allege specific facts to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *see also Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient.")

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)).

5

In other words, "to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy." *Id.* at 1295 n.5.

Rose does not allege a plausible claim under § 1985. The Complaint does not even contain the word conspiracy or conspire, and makes only a single passing reference to § 1985 in its opening paragraph. (Compl. at 1.) Rose has not alleged facts regarding the formation of a conspiracy between Tyndale or any other individuals. Even if Rose could allege the formation of a conspiracy, Rose also fails to allege plausibly that racial animus motived any such conspiracy with respect to the events of October 2022. Accepting Rose's contention that Tyndale made a false report to LCCY about the welfare of his son which resulted in an investigation by LCCY solely for the purposes of argument, Rose does not assert that Tyndale was motivated by racial animus. Instead, he explicitly concedes that Tyndale was motivated by vindictiveness and acted specifically in retaliation for Rose's decision not to hire her for the position as a math tutor. (*See, e.g.*, Compl. ¶ 40) ("Plaintiff [Rose] believes Defendant's actions were a retaliatory and vindictive tactic because, the Plaintiff did not select the Defendant for the open position teaching Plaintiff's son[.]"); (*id.* ¶ 41) ("Plaintiff further contends that the Defendant made these false statements in bad faith in order to harass the Plaintiff and Plaintiff's minor son . . . because, Defendant was not hired for the job and she decided to use a public agency for her vindictive intentions."); (*id.* ¶ 50) ("Plaintiff seeks to have a trial by jury so that in the future this type of vindictiveness will not damage a mentally-challenged child who was harassed and singled out by a White Racist Supremacist who lied because she was not hired.").

Accordingly, because he does not allege a conspiracy motivated by a racial or class based discriminatory animus, Rose's Complaint fails to state a plausible claim under § 1985 and all

such claims will be dismissed pursuant to § 1915(e)(2)(B)(ii).[3] *Cf. Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 592 (D.N.J. 2003), aff'd, 137 Fed. Appx. 482 (3d Cir. 2005) (dismissing § 1985 conspiracy claim for failure to state a claim where plaintiff, an indigent, African-American woman, asserted that a medical center and several doctors conspired to deprive her of her Medicaid benefits because she did "not provide a factual basis for her claims that the alleged conspiracy was motivated by 'racial . . . or otherwise class-based' animus."). Because Rose has failed to allege the existence of a § 1985 conspiracy motivated by a racial or class based discriminatory animus, he also cannot maintain a plausible § 1986 claim and this claim will similarly be dismissed pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. As it

---

[3] To the extent Rose's Complaint could liberally be construed to allege a claim under § 1981, Rose similarly cannot state a plausible claim under that statute as he does not sufficiently allege intentional discrimination on the basis of his race. To state a claim under § 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts . . . ." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (alterations in original) (quoting *Yelverton v. Lehman*, No. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir. 1999)). While Rose does allege that he is a member of a racial minority, (*see* Compl. at 1; *see also id.* ¶ 39), he explicitly disclaims that Tyndale committed any intentional act to discriminate against him based on his race with respect to the events of October 2022, and instead alleges that she acted out of retaliation for Rose declining to hire her as a math tutor. (*See id.* ¶¶ 40-41, 50.) Rose only alleges in broad, conclusory terms he was the victim of racial discrimination, but he does not offer facts to support his conclusory allegation of generalized racial bias by Tyndale. Instead, Rose specifically proffers a non-racially motivated reason for her allegedly making a false report to LCCY. Moreover, even in the absence of a non-racially motivated reason for her conduct, Rose's conclusory and generalized allegations of racial bias are insufficient to satisfy the elements of a claim under § 1981. *See Spence v. Caputo*, No. 12-1077, 2015 WL 630294, at *27 (W.D. Pa. Feb. 12, 2015) (dismissing § 1981 and § 1982 claims because plaintiff's claims were mere speculation and did not allege which of the enumerated rights under these sections were allegedly violated, which defendants were involved, the dates that any violations occurred, nor were facts alleged to show that any deprivation of the enumerated rights was racially motivated); *see also Davis v. Samuels*, 962 F.3d 105, 115-16 (3d Cir. 2020) (affirming dismissal on the merits of plaintiff's § 1981 claim against federal defendants for failure to state a plausible claim of race discrimination).

appears that any attempt to amend his §§ 1985 or 1986 claims would be futile, these claims will be dismissed with prejudice.[4] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should generally be granted "unless amendment would be inequitable or futile.")

### B.   Rose's Claim Under § 1988

Rose also seeks to assert a claim under 42 U.S.C. § 1988. (Compl. at 1.) Section 1988(b) provides in pertinent part that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Rose's attempt to bring a claim pursuant to § 1988 in this case fails because § 1988 does not

---

[4]   Additionally, although Rose does not cite 42 U.S.C. § 1983, his Complaint, construed liberally, could fairly be understood as an attempt to bring a claim against Tyndale pursuant § 1983, the vehicle by which federal constitutional claims are brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Pursuant to § 1983, action under color of state law requires that the one liable under that statute have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). "Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful." *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999))(internal quotations omitted).

   Based on the allegations of the Complaint, Rose has not plausibly alleged facts demonstrating that Tyndale was a state actor for purposes of § 1983. It is clear from his allegations, that Tyndale was a stranger who Rose met through Craigslist and that she had no affiliation with any state entity. Moreover, in general, "merely filing a report of child neglect with a state actor, even if false, is insufficient to create liability under Section 1983." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000); *see also Topolski v. Wrobleski*, No. 13-872, 2013 WL 5652724, at *1–3 (N.D.N.Y. Oct. 16, 2013) (concluding that allegations that private actors – the grandparents –falsely reported child abuse in an effort to commence child-removal proceedings were insufficient to make them state actors for purposes of § 1983). Accordingly, any claims Rose seeks to bring under § 1983 will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim because Tyndale is not a state actor.

authorize an independent cause of action.  *See Moor v. County of Alameda*, 411 U.S. 693, 702 (1973) (Section 1988 does not create an independent federal cause of action and noting that it was "intended to complement the various acts which do create federal causes of action for the violation of federal civil rights.").  Furthermore, Rose has failed to allege a plausible claim under either §§ 1981, 1983, 1985, or 1986 and "in the absence of another, viable civil rights claim, [Rose] may not sue for a violation of Section 1988 alone."  *Banks v. Owens*, No. 17-5423, 2018 WL 6249709, at *6 (E.D. Pa. Nov. 29, 2018).  Finally, even if Rose had alleged a plausible civil rights claim, he would still not be entitled to recover reasonable attorney's fees under § 1988 because he is a non-lawyer, *pro se* litigant.  *See Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir. 1982) (holding that § 1988 "does not entitle a non-lawyer, pro se litigant to attorney's fees").  Accordingly, any claim under § 1988 is dismissed with prejudice.

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant Rose leave to proceed *in forma pauperis*, dismiss Rose's claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Rose will not be granted leave to amend because amendment of his claims would be futile.  *See Grayson*, 293 F.3d at 114.  An appropriate Order follows.

                                              **BY THE COURT:**

                                              **/s/ Jeffrey L. Schmehl**
                                              **JEFFREY L. SCHMEHL, J.**